IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-415-FL-KS

| | |
|---|---|
| JENNIFER WILLIFORD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK BISIGNANO, Commissioner ) <br> of Social Security Administration,[1] ) <br> ) <br> Defendant. ) | **MEMORANDUM &** <br> **RECOMMENDATION** |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned recommends the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

---

[1] Plaintiff's complaint names Martin O'Malley in his official capacity as Commissioner of Social Security. Frank Bisignano is now the Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on March 26, 2021, with an alleged onset date of March 1, 2018. (R. 23, 362–72.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 23, 193–94, 221, 250, 283–84.) A hearing was held on July 25, 2023, before Administrative Law Judge ("ALJ") Joseph Brinkley, who issued an unfavorable ruling on November 9, 2023. (R. 20–48, 85–126.) On May 7, 2024, the Appeals Council denied Plaintiff's request for review. (R. 6–9.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On July 17, 2024, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

2

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to

perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act for an individual with statutory blindness through December 31, 2037. (R. 25.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2018, the alleged onset date. (R. 25.) Next, the ALJ determined Plaintiff has the severe impairments of major depressive disorder, post-traumatic stress disorder, anxiety, bilateral knee osteoarthritis right worse than left with low back pain, lumbar impairment, and obesity. (R. 25.)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 27.) The ALJ expressly considered Listings 1.15, 1.18, 12.04, 12.06, and 12.15 as well as SSR 19–2p in connection with Plaintiff's obesity. (R. 27–28.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

4

the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), in that in an eight-hour workday that includes regularly scheduled breaks, [Plaintiff] can sit for six hours out of an eight-hour workday, stand and/or walk for six hours out of an eight-hour workday, and lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] will need to reserve the flexibility of alternating sitting with standing and/or walking every 45 minutes. She will not need to leave the workstation unless on regularly scheduled breaks. [Plaintiff] can frequently use the bilateral upper extremities to finger, handle, grasp, and feel; can occasionally use the bilateral lower extremities to operate foot and leg controls; can occasionally stoop, crouch, kneel, and climb stairs; cannot climb ladders, ropes, or scaffolds; cannot work around dangerous, moving, mechanical parts and unprotected heights; must avoid concentrated exposure to bright, flashy neon type lights; and is limited to working in a moderate noise environment. [Plaintiff] is capable of performing short, simple, routine, repetitive tasks in two-hour intervals; occasionally can have direct interaction with the general public, coworkers, and supervisors; is capable of performing jobs that are not production rate or fast paced assembly line.

(R. 29.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 29–31.) At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a clerical worker. (R. 39–40.) At step five, the ALJ determined based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: housekeeping cleaner (DOT #323.687-014), photocopying-machine operator (DOT #207.685-014), and mailroom clerk (DOT #209.687-026). (R. 40–41.) The ALJ concluded that Plaintiff has

not been under a disability as defined by the Act from March 1, 2018, through the date of the decision. (R. 41.)

IV. Plaintiff's Arguments

Plaintiff makes two arguments on review:

(A) the ALJ failed to resolve conflicts between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") regarding the reasoning, standing, and walking requirements of the step-five jobs (Pl.'s Br. [DE #12] at 5–11); and

(B) the ALJ erred in his evaluation of the medical necessity of Plaintiff's assistive device (*id.* at 11–16).

The Commissioner argues the ALJ identified at least one job existing in significant numbers in the national economy without conflict or ambiguity. (Comm'r's Br. [DE #14] at 7–9.) The Commissioner also argues Plaintiff failed to establish that her cane was a medically required assistive device. (*Id.* at 10–12.) For the reasons explained below, the undersigned agrees with Plaintiff and thus recommends remand.

A. Step Five

Plaintiff identifies two conflicts between the VE's testimony and the DOT. First, she argues the RFC limitation to work involving "short, simple, routine, repetitive tasks in two-hour intervals" conflicts with two jobs identified at step five (mail clerk and photocopy-machine operator) because those jobs require a reasoning level of 2 or 3. (R. 29; Pl.'s Br. at 6.) She also argues the RFC limitation of alternating between sitting or standing/walking every 45 minutes conflicts with the housekeeping cleaner job because it requires standing and walking for a majority of the workday. (Pl.'s Br. at 9.) The Commissioner does not respond to the argument

6

related to reasoning levels, and instead argues there is no conflict in the VE testimony related to the housekeeping cleaner job. (Comm'r's Br. at 8–9.) The Commissioner argues that his step-five burden was met because the ALJ identified one job—housekeeping cleaner—that exists in significant numbers in the national economy. (*Id.*)

An ALJ must independently identify and obtain a reasonable explanation from the VE as to any apparent conflicts between the VE's testimony and the DOT before relying on the VE's testimony. *Pearson v. Colvin*, 810 F.3d 204, 209–10 (4th Cir. 2015) (addressing the impact of SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000)). "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.*

Turning first to Plaintiff's argument related to reasoning level, the ALJ posed a hypothetical RFC to the VE limiting an individual to light work and the ability to carry out "short, simple, routine, repetitive tasks in two-hour intervals," among other things. (R. 115.) The VE identified housekeeping cleaner (reasoning level 1), photocopying-machine operator (reasoning level 2), and mail room clerk (reasoning level 3) as jobs for the hypothetical person. (R. 117); Cleaner, Housekeeping, DOT #323.687-014, 1991 WL 672783; Photocopying-Machine Operator, DOT #207.685-014, 1991 WL 671745; Mail Clerk, DOT #209.687-026, 1991 WL 671813. Level 2 reasoning requires "carry[ing] out detailed but uninvolved written or oral

7

instructions" and Level 3 requires higher levels of reasoning, as reasoning levels ascend in complexity. *See* Photocopying-Machine Operator, DOT #207.685-014, 1991 WL 671745; *Lawrence v. Saul*, 941 F.3d 140, 142 n.5 (4th Cir. 2019).

Jobs requiring a reasoning level of 2 or 3 present a conflict with an RFC limitation to "short and simple" instructions. *See Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018); *Keen v. Kijakazi*, No. 4:20-CV-99-KS, 2022 WL 851722, at *3–4 (E.D.N.C. Mar. 22, 2022) (analyzing apparent inconsistency between RFC limitation to very short and simple instructions and reasoning-level-two jobs based on *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), and *Lawrence*, 941 F.3d at 143). Here, there is an apparent conflict. ALJ Brinkley found that Plaintiff's RFC was limited to carrying out "short, simple, routine, repetitive tasks in two-hour intervals." However, he also found that Plaintiff could perform jobs which may require a person to carry out "detailed" instructions or more. (R. 29, 41.) The VE does not discuss this apparent conflict, nor does ALJ Brinkley discuss or resolve the conflict at step five. (R. 40–41.)

Turning to the housekeeping cleaner job, Plaintiff argues the job is one of light exertion which "generally require[s] standing and walking for the majority of the workday." (Pl.'s Br. at 9 (first citing 20 C.F.R. § 404.1567(b); and then citing SSR 83–10, 1983 WL 31251 (Jan. 1, 1983)).)[2] Plaintiff argues this conflicts with the RFC

---

[2] According to SSR 83–10, light work "requires a good deal of walking or standing," and even though the majority of work for certain jobs can be performed while seated (for example, as a mattress sewing machine operator), "[r]elatively few unskilled light jobs are performed in a seated position." SSR 83–10, 1983 WL 31251, at *5.

8

limitation of alternating between sitting or standing/walking every 45 minutes. (*Id.* at 10; R. 29.) When asked about matters such as the sit/stand option that were not covered by the DOT, the VE testified he based his answers on his experience without any further explanation about how that experience informed his testimony. (R. 118.) The ALJ later accepted the testimony of the VE and concluded there was "reasonable explanation for the discrepancy between the [VE's] testimony and the information contained in the DOT," including with regard to the sit/stand option. (R. 41.)

The undersigned does not believe there is sufficient information for the ALJ to conclude that there is a "reasonable explanation" for the conflict between the DOT and the VE's testimony.[3] The housekeeping cleaner job includes duties such as moving furniture, hanging drapes, and making beds. Cleaner, Housekeeping, DOT #323.687-014, 1991 WL 672783. It is difficult to imagine how an individual could perform the requirements of the job for a full workday if limited to the sitting and standing requirements outlined in Plaintiff's RFC. *See Lawson v. Berryhill*, No. 1:17-CV-486-TJS, 2018 WL 1135641, at *3 (D. Md. Mar. 1, 2018) (comparing DOT description to claimant's limitations and finding it implausible that claimant could perform the DOT's articulated job duties); *Crouse v. Saul*, No. 1:18-CV-269, 2019 WL 4015553, at *6 (M.D.N.C. Aug. 26, 2019) (same), *R. & R. adopted*, 2019 WL 5783532 (M.D.N.C. Sept. 16, 2019).

---

[3] A reasonable explanation can include, but is not limited to, information from the VE based on "reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling." SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

9

While it is possible that some housekeeping cleaner jobs could accommodate the sit/stand option, the VE did not offer any testimony about how many housekeeping cleaner jobs could make the accommodation, nor did ALJ Brinkley inquire about a possible number of positions. *See Pearson,* 810 F.3d at 211 (holding that it is "not enough that some positions exist" that accommodate the claimant's limitations, the "vocational expert must testify to how many of these positions" allow for the limitation). Despite these issues, the ALJ relied on the VE's experience alone to explain the apparent conflict between the VE's testimony and the DOT.[4] The undersigned does not find that to be a "reasonable explanation," and, thus, recommends remand.

### B. Medical Necessity Assessment for Cane

Plaintiff argues the ALJ erred in his medical necessity analysis for Plaintiff's cane because he failed to properly consider the opinion of consultative examiner Nurse Practitioner ("NP") Carrillo Bawa who opined that Plaintiff needed a "[r]ight sided four point cane" to stand and ambulate. (Pl.'s Br. at 11–16; R. 630–35 (Bawa report).) The Commissioner responds that the ALJ correctly confirmed there was "no unambiguous medical opinion or documentation" establishing the cane as medically necessary. (Comm'r's Br. at 10–12.) The undersigned agrees with Plaintiff because

---

[4] The undersigned questions whether the ALJ would have relied on the VE's experience alone had ALJ Brinkley known of the discrepancies between the VE-recommended jobs of photocopying-machine operator and mail clerk and the reasoning levels required by Plaintiff's RFC.

10

the ALJ's medical necessity analysis insufficiently evaluates NP Bawa's opinion of Plaintiff's cane usage.

There are two passages in ALJ Brinkley's decision that address Plaintiff's need for a cane—a direct discussion applying the standard set forth in SSR 96–9p, 1996 WL 374185, at *7 (July 2, 1996), to determine whether a hand-held assistive device is medically required (R. 33), and a discussion of NP Bawa's consultative examination report and opinions (R. 35). In reaching the conclusion that Plaintiff's use of a cane was not medically necessary pursuant to SSR 96–9p, ALJ Brinkley explained that

> there is no medical documentation establishing the need for a cane. [Plaintiff] has repeatedly ambulated with an antalgic gait and used a cane during her examinations throughout the record. However, there have been no objective findings regarding [Plaintiff]'s balance, coordination, or Romberg sign; when these maneuvers were attempted during her consultative examinations, [Plaintiff] replied that she was unable to do so without the support of her cane (Exhibits 7F [R. 630–36] and 13F [R. 657–63]). There is certainly no documentation in the medical evidence of record describing the circumstances for which a cane is needed, as required by SSR 96–9p. That [Plaintiff] may prefer to use a cane from time to time is not sufficient to establish a medical necessity.

(R. 33.)

Nowhere does ALJ Brinkley analyze the findings and conclusions in NP Bawa's consultative examination report as they pertain to the medical necessity of a cane. This is problematic because NP Bawa's report noted that Plaintiff was unable to stand without a cane and opined that Plaintiff required a right-sided four-point cane to ambulate. (R. 633, 635.) This contradicts ALJ Brinkley's statements that "there is no medical evidence establishing the need for a cane" and "no documentation in the medical evidence of record describing the circumstances for which a cane is needed."

11

(R. 33.) Thus, ALJ Brinkley needed to explain how he resolved this inconsistency in the record evidence to allow for meaningful review. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996); *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (noting that even under the deferential standard of review, "ALJs must build an accurate and logical bridge from the evidence to their conclusions" (quoting *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020))); *Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions").

Later in the decision, when ALJ Brinkley discussed NP Bawa's consultative examination and report, ALJ Brinkley expressly rejected the opinion that Plaintiff needs a cane to stand "for the reasons previously discussed," appearing to refer to the prior medical necessity analysis. (R. 35.) However, as explained above, ALJ Brinkley's discussion of the medical necessity of Plaintiff's cane does not adequately resolve the conflict between ALJ Brinkley's rationale and the record evidence contained in NP Bawa's report. Moreover, to the extent ALJ Brinkley found NP Bawa's opinion regarding Plaintiff's cane usage unpersuasive, he does not state as much or explain his reasoning for such a finding. These failures preclude meaningful review, and thus, remand is recommended.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be REVERSED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 13, 2025** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 30th day of May 2025.

_____
KIMBERLY A. SWANK
United States Magistrate Judge